714 S.E.2d 223

Randy L. MACE, Personal Representative of the Estate of Kathy W. Mace, Deceased, Plaintiff Below, Appellant

v.

MYLAN PHARMACEUTICALS, INC., Mylan, Inc., and Mylan Technologies, Inc., Defendants Below, Appellees.

No. 35710.

Supreme Court of Appeals of West Virginia.

Submitted March 30, 2011.

Decided June 16, 2011.

Concurring and Dissenting Opinion by Justice Benjamin July 22, 2011.

Kathryn Reed Bayless, Esq., Bayless Law Firm, PLLC, Princeton, WV, Attorney for Appellant.

Clem C. Trischler, Esq., Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Pittsburgh, PA, Attorney for Appellees.

WORKMAN, Chief Justice:

The plaintiff below and appellant herein, Randy L. Mace ("Mr. Mace"), as personal representative of the Estate of Kathy W. Mace ("Ms. Mace"), appeals from an order of the Circuit Court of Monongalia County, West Virginia, dismissing his wrongful death lawsuit on the basis of forum non conveniens. Applying West Virginia Code § 56–1–1a (Supp.2010), the forum non conveniens statute, the circuit court concluded that North Carolina, the state in which the action accrued, is a more convenient forum for Mr. Mace's claims. Mr. Mace contends, however, that he is unable to try his claims in North Carolina, because they are barred by the statute of limitations in that state. Thus, he contends, the circuit court erred in dismissing the case, because it misinterpreted the forum non conveniens statute as permitting dismissal despite the lack of an alternate forum in which the claims may be tried.

Upon careful consideration, the Court finds that the language of the statute is ambiguous and should be construed in a manner that is consistent with this Court's prior case law and the federal common law doctrine of forum non conveniens. Under

this construction, the circuit court erred in its interpretation of the statute. Its order dismissing this action on the basis of forum non conveniens is, therefore, reversed and the case is remanded for further consideration consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Ms. Mace, a North Carolina resident, died on October 25, 2005, allegedly from an overdose of the narcotic pain medication, fentanyl. On July 1, 2008, Mr. Mace filed a wrongful death lawsuit in the Circuit Court of Monongalia County against Mylan Pharmaceuticals, Inc., Mylan, Inc., and Mylan Technologies, Inc. (jointly "the Mylan defendants"). Mylan Pharmaceuticals, Inc., is a West Virginia corporation with its headquarters in Morgantown, West Virginia; Mylan Technologies, Inc., is a West Virginia corporation with its headquarters in St. Albans, Vermont; and Mylan, Inc., is a Pennsylvania corporation with its headquarters in Canonsburg, Pennsylvania. Mr. Mace asserts that the Mylan defendants were responsible for the design, manufacture, marketing and distribution of a pain patch known as the Mylan Fentanyl Transdermal System ("the Mylan patch").

In the complaint, Mr. Mace alleges that Ms. Mace was prescribed the Mylan patch on October 21, 2005, and that she died four days later from a fentanyl overdose while wearing that patch. Mr. Mace asserts claims of strict products liability, negligence, breach of implied warranty and breach of express warranty, and seeks punitive damages for deliberate, intentional reckless and/or malicious behavior.

Mr. Mace further asserts in the complaint that

> [t]he plaintiff did not know, and a reasonable person under the circumstances would not have had reason to know, that the patches prescribed for, worn, and alleged to have been a cause of decedent's death were manufactured by Mylan until less than two years before filing this complaint.

Importantly, both West Virginia and North Carolina, where Ms. Mace died, have a two-year statute of limitations for wrongful death

claims. W. Va.Code § 55–7–6(d) (2008); N.C. Gen.Stat. § 1–53(4) (2008). In his brief to this Court, Mr. Mace explains that he had originally sued another generic drug manufacturer in California within two years of Ms. Mace's death. During the course of that litigation, Mr. Mace discovered that the Mylan defendants were the actual manufacturers and distributors of the fentanyl patch worn by Ms. Mace. Accordingly, by the time Mr. Mace initiated this suit in West Virginia against the Mylan defendants, more than two years had passed after Ms. Mace's death. If given the opportunity, Mr. Mace intends to argue that West Virginia's discovery rule tolled the running of the statute of limitations in this case.

On July 22, 2008, the Mylan defendants filed a motion to dismiss based on the doctrine of forum non conveniens, which is codified in West Virginia Code § 56–1–1a. They argued that North Carolina is the appropriate forum in which to litigate the case because Ms. Mace was a resident of North Carolina, she was prescribed and used the Mylan patch in North Carolina, and she died in North Carolina. The Mylan defendants further asserted that the Mylan patch was manufactured at a production facility in St. Albans, Vermont, and was shipped from Vermont to North Carolina. Accordingly, the Mylan defendants argued that the cause of action arose in North Carolina and the suit's only connection to West Virginia is that two of the Mylan defendants are incorporated under West Virginia law, and one has its corporate headquarters in the state. Thus, the Mylan defendants argued that North Carolina is a more convenient forum.

Mr. Mace opposed the Mylan defendants' motion, arguing that none of the Mylan defendants' employees reside in North Carolina and that he would make the relevant North Carolina fact witnesses available to the Mylan defendants in West Virginia for depositions. Mr. Mace further asserted that, although North Carolina and West Virginia both have two-year statutes of limitations for wrongful death claims, only West Virginia permits tolling the statute of limitations based on the discovery rule. Accordingly, Mr. Mace asserted that he would not be able

to pursue the wrongful death claim in North Carolina unless the Mylan defendants waived their statute of limitations defense in that state. He argued that, without such a waiver, North Carolina is not available as an alternate forum in which the claims could be tried.

On December 16, 2008, the circuit court entered an order dismissing the case on the basis of forum non conveniens. Among other things, the circuit court concluded that "the Plaintiff resides in North Carolina and the decedent was a resident of North Carolina. The Mylan patch was used by the decedent[ ] while [she was] living in ... North Carolina. Therefore, an alternate forum exists in which to bring [this] action[ ]." The circuit court further noted, however, that

> [t]he Defendants submit that they will consent to and will not contest personal jurisdiction in ... North Carolina. This is especially important ... as North Carolina does not recognize the discovery rule in wrongful death actions and the case is already barred under the two-year statute of limitations.

Accordingly, the circuit court dismissed the action on the basis of forum non conveniens, with the caveat that the Mylan defendants would consent to personal jurisdiction in North Carolina and waive their statute of limitations defense in that state.

On February 17, 2009, the Mylan defendants filed a motion to amend and/or clarify the circuit court's order arguing that, while they had agreed to waive any new statute of limitations defense, they should not be "required to waive any statute of limitations defense that existed at the time of the commencement of the West Virginia litigation...." The Mylan defendants asserted that the circuit court's order did not accurately reflect the discussion which had occurred at the oral argument on their motion. In response, on February 19, 2009, Mr. Mace filed a motion to reinstate the case in the Circuit Court of Monongalia County, arguing that if the circuit court amended its first order in the manner requested by the Mylan defendants, he would not be able to pursue his claims in North Carolina, as the statute of limitations had expired prior to the commencement of the suit in West Virginia.

On June 3, 2009, the circuit court entered an order "clarifying" its original dismissal order in the manner requested by the Mylan defendants. Specifically, it stated that the Mylan defendants "are not required to waive any statute of limitations defense that existed at the time of the filing of the West Virginia action." The circuit court further noted that it "is aware that the case may be time barred as North Carolina does not recognize the discovery rule in wrongful death actions. However, North Carolina law would be applied by this Court if this action were to be litigated in West Virginia."

Thereafter, on July 20, 2009, Mr. Mace filed a motion asking the circuit court to reconsider its June 3, 2009, order, and again requesting that it reinstate the case in West Virginia. He argued that the circuit court erred in determining that North Carolina law would apply because West Virginia's discovery rule is procedural and a determination of whether it should be applied requires a choice of law analysis.

The circuit court, on March 19, 2010, entered an order denying Mr. Mace's motion, and reiterating its previous findings. It added that

> [t]he decisions in *Bradshaw v. Soulsby,* 210 W.Va. 682, 558 S.E.2d 681 (2001) and/or *McKinney v. Fairchild,* 199 W.Va. 718, 487 S.E.2d 913 (1997) do not require application of West Virginia's statute of limitations discovery rule to a wrongful death case governed by North Carolina substantive law under the facts of this case, and the court declines to find that West Virginia's discovery rule should be applied in this case.

It is from this order that Mr. Mace now appeals.

## II. STANDARD OF REVIEW

On appeal, Mr. Mace contends that the circuit court misinterpreted West Virginia Code § 56-1-1a by dismissing the case despite the absence of an alternate forum in

which the case may be tried.[1] This Court typically reviews a circuit court's decision on venue, such as a dismissal on the basis of forum non conveniens, under an abuse of discretion standard. *See* Syl. Pt. 3, *Cannelton Indus., Inc. v. Aetna Cas. & Sur. Co. of Am.*, 194 W.Va. 186, 460 S.E.2d 1 (1994) ("A circuit court's decision to invoke the doctrine of *forum non conveniens* will not be reversed unless it is found that the circuit court abused its discretion."). Here, however, Mr. Mace does not ask this Court to review the circuit court's discretionary application of the forum non conveniens statute, but rather argues that the circuit court misinterpreted the statute.[2] "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III. DISCUSSION

### A. Interpretation of West Virginia Code § 56-1-1a

West Virginia Code § 56-1-1a, which codified the doctrine of forum non conveniens,[3] provides, in relevant part:

(a) In any civil action if a court of this state, upon a timely written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action, or dismiss any plaintiff: *Provided,* That the plaintiff's choice of a forum is entitled to great deference, but this preference may be diminished when the plaintiff is a nonresident and the cause of action did not arise in this state. In determining whether to grant a motion to stay or dismiss an action, or dismiss any plaintiff under the doctrine of forum non conveniens, the court shall consider:

(1) *Whether an alternate forum exists in which the claim or action may be tried;*

(2) Whether maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;

(3) Whether the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(4) The state in which the plaintiff(s) reside;

(5) The state in which the cause of action accrued;

(6) Whether the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alter-

---

1. As a second issue, Mr. Mace contends that the circuit court erred in holding that North Carolina law, which does not recognize the discovery rule in wrongful death actions, would be applied to the case in West Virginia instead of West Virginia law, which applies the discovery rule to such actions. As explained more fully herein, the Court will not address this question and the case is remanded for further proceedings by the circuit court.

2. Mr. Mace frames the issue on appeal narrowly, arguing only that the circuit court erred in its interpretation of the first factor for consideration under the forum non conveniens statute. *See* W. Va.Code § 56-1-1a(a). Mr. Mace does not challenge the circuit court's discretionary findings with regard to the other seven factors. *See id.*

3. In 1990, this Court first adopted the common law doctrine of forum non conveniens, permitting courts to decline to exercise jurisdiction in favor of an alternate forum outside of the state when doing so would "promote the convenience of the witnesses and the ends of justice." Syl. Pt. 1, *Norfolk and W. Ry. Co. v. Tsapis*, 184 W.Va. 231, 400 S.E.2d 239 (1990), *superseded by statute*, W. Va.Code § 56-1-1a (Supp.2010). In 2003, the Legislature attempted to codify a version of that doctrine by amending West Virginia Code § 56-1-1, the general venue statute, to add a provision governing the dismissal of a case in West Virginia on the basis that the acts or omissions giving rise to the claim(s) occurred in another state. W. Va.Code § 56-1-1(c) (2003) (repealed). After this Court invalidated that provision under the Privileges and Immunities Clause of the United States Constitution, *see* Syl. Pt. 2, *Morris v. Crown Equip. Corp.*, 219 W.Va. 347, 633 S.E.2d 292 (2006), the Legislature, in 2007, enacted West Virginia Code § 56-1-1a, entitled "Forum non conveniens." It is this "new" statute, which was amended once in 2008 on an unrelated matter, that is at issue in this appeal.

nate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state. Factors relevant to the private interests of the parties include, but are not limited to, the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of a view of the premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Factors relevant to the public interest of the state include, but are not limited to, the administrative difficulties flowing from court congestion; the interest in having localized controversies decided within the state; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty;

(7) Whether not granting the stay or dismissal would result in unreasonable duplication or proliferation of litigation; and

(8) Whether the alternate forum provides a remedy.

. . .

(c) *If the statute of limitations in the alternative forum expires while the claim is pending in a court of this state,* the court shall grant a dismissal under this section only if each defendant waives the right to assert a statute of limitation defense in the alternative forum. . . .

*Id.* at § 56–1–1a(a) & (c) (emphasis added). Thus, under this statute, a court may dismiss a case over which it has jurisdiction if it determines that "in the interest of justice and for the convenience of the parties" the action would more properly be heard in forum outside this state. *Id.* at § 56–1–1a(a). To make such determination, courts are instructed to consider eight factors. *Id.* If the factors weigh in favor of dismissal, but the statute of limitations for the claim(s) expired in the alternate forum while the claim(s) was pending in this state, a court should only dismiss if the defendant agrees to waive the

statute of limitations defense in that alternate forum. *Id.* at § 56–1–1a(c).

Mr. Mace contends that, under this Court's prior cases adopting the common law doctrine of forum non conveniens, the existence of an alternate forum in which the claim could be tried—the first factor for consideration under the statute—was a requirement for dismissal, not merely one factor for consideration. He argues that, in creating West Virginia Code § 56–1–1a, the Legislature intended to codify the common law doctrine, not change it. Thus, he contends, in keeping with the legal principles set forth in this Court's prior case law, this Court should interpret the first factor for consideration, "[w]hether an alternate forum exists in which the claim or action may be tried," as prohibiting a court from dismissing a case on the basis of forum non conveniens if no other forum exists in which the claim may be tried.

Mr. Mace further argues that, under the prior case law, the availability of another forum depended in part upon whether the claim or action would be barred in that forum by a statute of limitations. He argues that in *Norfolk and Western Railway Company v. Tsapis,* 184 W.Va. 231, 400 S.E.2d 239 (1990), *superseded by statute,* W. Va.Code § 56–1–1a (Supp.2010), this Court specifically held that an alternate forum was not "available" if the statute of limitations in the alternate forum would bar the claim. Thus, Mr. Mace contends, under this Court's prior case law, North Carolina could not be considered an available alternate forum because the statute of limitations in North Carolina precludes him from being able to try his claims in that forum.

The Mylan defendants argue that, in codifying the doctrine of forum non conveniens, the Legislature modified this Court's prior case law. They contend that the language of the statute is plain and unambiguous and, thus, pursuant to well-established principles of statutory interpretation, this Court must apply its plain meaning. The Mylan defendants further assert that, pursuant to the plain language of the statute, none of the eight factors is singularly determinative; rather, a court "shall" consider all eight and no one factor is given more weight than any

other. *See* W. Va.Code § 56–1–1a(a)(1)–(8). Moreover, the Mylan defendants argue that the circuit court correctly found North Carolina to be an available alternate forum. They argue that an alternate forum "exists" when the defendant is amenable to service of process in the alternate jurisdiction, a principle previously set forth by the United States Supreme Court. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Because they are amenable to process in North Carolina, the Mylan defendants contend that it "exists" as an alternate forum in this case.

### 1.

■ " 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. Pt. 1, *State v. Jarvis,* 199 W.Va. 635, 487 S.E.2d 293 (1997). However, "[a] statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992). Thus, "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek,* 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949).

Turning to the instant case, the language of West Virginia Code § 56–1–1a(a)(1), which directs courts to consider "[w]hether an alternate forum exists in which the claim or action may be tried," is "of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford,* 132 W.Va. at 386, 52 S.E.2d at 747. This factor is listed as one of eight that courts are directed to consider and there is no indication from the plain language of the statute that it is of any more significance than any other factor or that a finding that no alternate forum "exists" would prohibit dismissal of the case on the basis of forum non conveniens. In other words, by listing this as merely one of several factors for consideration, the statute seems to imply that a court could dismiss an action on the basis of forum non conveniens even where no other forum exists "in which the claim or action may be tried." W. Va.Code § 56–1–1a(a)(1).

Language found elsewhere in the statute, however, weighs against such an interpretation. Indeed, language used by the Legislature in subsections (a) & (c) of the statute presumes that a motion for dismissal on the basis of forum non conveniens will not be entertained unless at least two forums exist in which the case may be tried. *See id.* at §§ 56–1–1a(a) & (c). Specifically, in subsection (a), a court reviewing such a motion is required to determine whether an action "would be more properly heard in a forum outside the state," which plainly implies that another forum exists in which the claim could be heard. *Id.* at § 56–1–1a(a). Similarly, the statute provides "[t]hat the plaintiff's choice of forum is entitled to great deference, but this preference may be diminished...." *Id.* Here, the discussion of the plaintiff's "choice of forum" clearly implies that at least two forums are available; the plaintiff would have no "choice" if only one forum existed in which the action could be heard. Finally, subsection (c) provides that "[i]f the statute of limitations *in the alternative forum* expires while the claim is pending in a court of this state, the court shall grant a dismissal under this section only if each defendant waives the right to assert a statute of limitation defense *in the alternative forum.* ...." *Id.* at § 56–1–1a(c) (emphasis added). Again, this language plainly presumes that an alternate forum exists and directs courts to consider what implication that alternate forum's statute of limitations will have on the case. Thus, various phrases and words used throughout subsections (a) and (c) of West Virginia Code § 56–1–1a imply that an alternate forum must exist in which a plaintiff's claims could be heard in order for a court to grant a motion to dismiss pursuant to this statute. Given this inherent conflict within the statute, the Court finds that the language of the statute is ambiguous in this respect and must be construed before it may be applied. *See Farley,* 186 W.Va. 693, 414 S.E.2d 454, Syl. Pt. 1.

**2.**

 In construing a statute, the Court is mindful that " '[t]he primary object . . . is to ascertain and give effect to the intent of the Legislature.' Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 3, *Davis Memorial Hosp. v. W. Va. State Tax Comm'r*, 222 W.Va. 677, 671 S.E.2d 682 (2008). " 'In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 2, *White v. Wyeth*, 227 W.Va. 131, 705 S.E.2d 828 (2010). Furthermore,

> [a] statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; *it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.*

Syl. Pt. 2, *State v. McClain*, 211 W.Va. 61, 561 S.E.2d 783 (2002) (quoting Syl. Pt. 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908)) (emphasis added).

As previously noted, Mr. Mace urges the Court to interpret the statute as merely codifying this Court's prior case law on forum non conveniens. The Mylan defendants, on the other hand, urge the Court to interpret the relevant statutory language in a manner that is consistent with the federal common law doctrine of forum non conveniens. As further explained herein, however, this Court's prior case law is, in fact, consistent with the United States Supreme Court case law on this subject; indeed, this Court relied heavily on several United States Supreme Court decisions in adopting the common law doctrine of forum non conveniens in this state. Because the Court presumes that the Legislature was familiar with this body of common law when it enacted the statute and that it intended to harmonize the statute with it, *see McClain*, 211 W.Va. 61, 561 S.E.2d 783, Syl. Pt. 2, the Court will consider both this state's prior case law and the relevant federal case law in construing the statute.

 In *Tsapis*, this Court's seminal case adopting the common law doctrine of forum non conveniens, the Court explained that:

> The common law principle of *forum non conveniens* is applicable only if, as a threshold matter, the forum court has jurisdiction and venue is proper under the statute. *It presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.*

Syl. Pt. 2, *Tsapis*, 184 W.Va. 231, 400 S.E.2d 239 (emphasis added). Notably, in formulating this syllabus point, this Court mirrored the language used by the United States Supreme Court in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), *partially superseded by statute*, 28 U.S.C. § 1404(a) (1948),[4] in which the United States Supreme Court stated: "In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." *Id.* at 506–07, 67 S.Ct. 839. Thus, this Court's prior case law is premised on the notion that a case will not be dismissed on the basis of forum non conveniens unless at least one alternate forum exists, and an alternate forum is presumed to exist if it is a forum in which "the defendant is amenable to pro-

---

4. In *Gilbert*, the United States Supreme Court recognized the federal common law doctrine of forum non conveniens. 330 U.S. at 507, 67 S.Ct. 839. One year later, the holding in *Gilbert* was partially superseded by the enactment of 28 U.S.C. § 1404(a), which governs the transfer of federal cases within the federal system on the basis of forum non conveniens. As stated by the Fifth Circuit Court of Appeals, however, "the doctrine of forum non conveniens, as set out in *Gilbert*, remains good law so long as the possible alternative forum is a state or foreign court." *Cowan v. Ford Motor Co.*, 713 F.2d 100, 103 (5th Cir.1983).

cess." *Tsapis,* 184 W.Va. 231, 400 S.E.2d 239, Syl. Pt. 2.

■ Because the language of subsections (a) and (c) of West Virginia Code § 56–1–1a similarly presumes that at least one alternate forum exists, the Court now holds that, under West Virginia Code § 56–1–1a (Supp. 2010), dismissal on the basis of forum non conveniens presupposes at least two forums in which the defendant is amenable to process; the statute furnishes criteria for choice between them. In the event that the defendant is not amenable to process in any alternate forum, dismissal of a claim or action under this statute would constitute error.

As Mr. Mace contends, however, this Court, in *Tsapis,* further limited the instances in which an alternate forum may be found to "exist." Specifically, the Court recognized that

> the doctrine [of forum non conveniens] is not triggered if there is no other available forum. Courts have recognized that unavailability is brought about if the statute of limitations precludes the institution of suit in another forum. *E.g., Miller v. United Technologies Corp.,* 40 Conn.Supp. 457, 515 A.2d 390 (1986); *Harry David Zutz, Ins., Inc. v. H.M.S. Assocs., Ltd.,* 360 A.2d 160 (Del.Super.1976); *Satkowiak v. Chesapeake & O. Ry. Co.,* 106 Ill.2d 224, 88 Ill.Dec. 55, 478 N.E.2d 370 (1985); *Johnson v. G.D. Searle & Co.,* 314 Md. 521, 552 A.2d 29 (1989); *Anderson v. Great Lakes Dredge & Dock Co.,* 411 Mich. 619, 309 N.W.2d 539 (1981); *Missouri Pac. R.R. Co. v. Tircuit, supra* [554 So.2d 878 (1989) ]; *Besse v. Missouri Pac. R.R. Co., supra* [721 S.W.2d 740 (1986) ]; *Civic S. Factors Corp. v. Bonat,* 65 N.J. 329, 322 A.2d 436 (1974); *Beatrice Foods Co. v. Proctor & Schwartz, Inc.,* 309 Pa.Super. 351, 455 A.2d 646 (1982). *See Annot.,* 57 A.L.R.4th 973 (1987).

*Tsapis,* 184 W.Va. at 236, 400 S.E.2d at 244. Thus, the Court held that, in considering the availability of an alternate forum, it is appropriate for courts to consider the impact of that forum's statute of limitations. *Id.* at Syl. Pt. 4 ("The doctrine of *forum non conveniens* is not triggered if there is no other available forum. Unavailability is brought about if the statute of limitations precludes the institution of another suit in another forum.").

The Mylan defendants argue that such a rule exceeds the United States Supreme Court's interpretation of what it means for an alternate forum to "exist." They contend that the only relevant question is whether they would be amenable to service of process in the alternate jurisdiction. Such interpretation, however, is too narrow, even under the United States Supreme Court case law on which the Mylan defendants purport to rely.

In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the United States Supreme Court considered whether, as a general matter, the substantive law of the alternate forum should be considered in determining whether to dismiss a case on the basis of forum non conveniens. Recognizing that such consideration would almost always defeat the dismissal of a case on the basis of forum non conveniens, the Supreme Court held that "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." *Id.* at 247, 102 S.Ct. 252. Nevertheless, it clarified that consideration of the other forum's law would, in rare instances, be appropriate:

> We do not hold that the possibility of an unfavorable change in law should never be a relevant consideration in a *forum non conveniens* inquiry. Of course, *if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all,* the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice.

*Id.* at 254–55, 102 S.Ct. 252 (emphasis added). The Supreme Court further explained, in a footnote directly following this passage:

> At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. In rare

circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.

*Id.* at 255 n. 22, 102 S.Ct. 252 (internal citations omitted). Consequently, under *Piper Aircraft,* the availability of an alternate forum rests on more than simply whether a defendant is amenable to service of process in that forum. Indeed, while a forum in which a defendant is amenable to process generally "exists" as an alternate forum, its availability as such is eliminated in the rare circumstance that "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254–55, 102 S.Ct. 252.

■ Returning to West Virginia Code § 56–1–1a, the Court finds that the language of the first factor for consideration, "whether an alternate forum exists in which the claim or action may be tried" should be interpreted in a manner that is consistent with *Tsapis* and *Piper Aircraft.* Consequently, the Court now holds that, in considering "whether an alternate forum exists in which the claim or action may be tried," pursuant to West Virginia Code § 56–1–1a(a)(1) (Supp.2010), an alternate forum is presumed to "exist" where the defendant is amenable to process. Such presumption may be defeated, however, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all. In such cases, the alternate forum ceases to "exist" for purposes of forum non conveniens, and dismissal in favor of that forum would constitute error.

In considering the language of the statute as a whole, which courts are directed to do when attempting to ascertain the underlying legislative intent, *see White,* 227 W.Va. 131, 705 S.E.2d 828, Syl. Pt. 2, the Court finds that this interpretation is consistent with the

overall objective of the forum non conveniens statute. The factors listed for consideration under West Virginia Code § 56–1–1a(a), have been provided by the Legislature to assist courts in determining whether dismissal of a claim or action on the basis of forum non conveniens is "in the interest of justice and for the convenience of the parties." *Id.* Undeniably, the interest of justice would not be served, nor would a plaintiff be convenienced, if an action over which a court in this state had proper jurisdiction was dismissed in favor of an alternate jurisdiction in which the remedy provided is so clearly inadequate or unsatisfactory that it is no remedy at all.

■ Turning to the facts of the instant case, the circuit court found that an alternative forum did, in fact, "exist" under the first factor for consideration because the Mylan defendants are amenable to process in North Carolina. In reaching this conclusion, the circuit court gave no weight to the effect that North Carolina's statute of limitations law, which does not recognize the discovery rule, will have on Mr. Mace's action. Because North Carolina does not recognize the discovery rule, it is not a forum in which Mr. Mace can attempt to litigate his claims. Accordingly, the remedy provided by North Carolina is so inadequate and unsatisfactory that it is no remedy at all. Under the facts of this case, therefore, North Carolina does not "exist" as an alternate forum in which Mr. Mace's claims may be tried and the circuit court erred in dismissing the action on the basis of forum non conveniens.[5]

## B. Choice of Law Question

Mr. Mace additionally contends that the circuit court erred in finding that, even if Mr. Mace's claims would be heard in West Virginia, the circuit court would apply North Carolina's law with regard to the discovery rule and the tolling of the statute of limitations. Specifically, in its June 3, 2009, "Order regarding defendants' motion to amend and/or

---

5. Nothing in this analysis is intended to imply that West Virginia's discovery rule should, in fact, be applied to this case, or that Mr. Mace would succeed under that law if given the opportunity. Rather, in considering a motion under West Virginia Code § 56–1–1a, a court should initially focus on whether an alternate forum "exists." Whether the plaintiff's claims could succeed in the West Virginia forum is another matter entirely.

clarify," the circuit court succinctly stated, without any further explanation:

> Although an alternate forum exists in which to bring these actions, the Court is aware that the case may be time barred as North Carolina does not recognize the discovery rule in wrongful death actions. However, *North Carolina law would be applied by this Court if this action were to be litigated in West Virginia.*

(Emphasis added). The circuit court reiterated this position in its March 19, 2010, "Order Denying Plaintiff's Motion to Reinstate," in which it stated:

> North Carolina has a two-year statute of limitations on wrongful-death actions, NC. G.S. § 1–53(4), with no discovery rule. *Udzinski v. Lovin* [358 N.C. 534], 597 S.E.2d 703, 706 (N.C.2004). The decisions in *Bradshaw v. Soulsby,* 210 W.Va. 682, 558 S.E.2d 681 (2001) and/or *McKinney v. Fairchild,* 199 W.Va. 718, 487 S.E.2d 913 (1997) do not require application of West Virginia's statute of limitations discovery rule to a wrongful death case governed by North Carolina substantive law under the facts of this case, and the court declines to find that West Virginia's discovery rule should be applied in this case.

Mr. Mace asserts that the circuit court erred in making such rulings and that West Virginia's discovery rule should be applied to this case. The Court, however, declines to consider this issue in this appeal.

█ The circuit court's statements on this issue cannot be viewed as final decisions on the merits. The circuit court was asked by the Mylan defendants to dismiss the case on the basis of forum non conveniens. No motion was ever filed with regard to choice of law questions, nor were the parties given an opportunity to fully brief the issue. More importantly, the circuit court's pronouncement that it would apply North Carolina law on the discovery rule issue was, in fact, dicta. The circuit court had already dismissed the case on the basis of forum non conveniens when it addressed the choice of law issue for the first time. Accordingly, this Court finds that the circuit court's brief consideration of this question is not a final decision on the merits of the issue which can be considered on appeal. *See, e.g., Walker v. W. Va. Ethics Comm'n,* 201 W.Va. 108, 119, 492 S.E.2d 167, 178 (1997) ("Our well-established practice has required us, on many previous occasions, to decline to determine an issue raised by the parties because that issue had not been passed upon by the circuit court.") (citations omitted).

## IV. CONCLUSION

For the reasons stated herein, the March 19, 2010, order of the Circuit Court of Monongalia County, West Virginia, is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Justice BENJAMIN concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

Justice KETCHUM dissents and reserves the right to file a separate opinion.

KETCHUM, J., dissenting:

WEST VIRGINIA CANNOT AFFORD TO BE A DUMPING GROUND FOR FOREIGN LAWSUITS.

West Virginia has very few trial judges and limited judicial resources. Nevertheless, the majority opinion will allow non-West Virginia residents, who suffered an injury in another state, to file their lawsuit in West Virginia.

In the present case, a North Carolina resident suffered an injury that occurred in North Carolina. The resulting lawsuit is barred under North Carolina law. Consequently, the North Carolina resident filed the lawsuit in West Virginia where the lawsuit would not be prohibited. If North Carolina law bars a North Carolina resident's lawsuit then why should West Virginia entertain the matter? We should worry about West Virginia residents and torts that occur in West Virginia, rather than injuries suffered by a North Carolina resident that occurred in North Carolina.

The facts of this case are straightforward: a North Carolina doctor prescribed a defective medical patch to a North Carolina resi-

dent. The patch was not made or used in West Virginia. The North Carolina resident who used the defective patch died in North Carolina. The North Carolina statute of limitations bars the suit in North Carolina. The North Carolina resident therefore brought the suit in West Virginia because the lawsuit is not barred under our statute of limitations.

This lawsuit "would be more properly heard in a forum outside this state," i.e. North Carolina. *W. Va.*Code § 56–1–1a. We should not protect tort claims by North Carolina residents when the North Carolina legislature and judiciary have seen fit to prohibit these claims. We should protect West Virginia residents from defective products and let North Carolina deal with injuries suffered by North Carolina residents that occur in North Carolina.

BENJAMIN, J., concurring in part and dissenting in part:

I agree in part with the result reached in the majority opinion insofar as it recognizes that the existence of a viable alternative forum is a prerequisite to the application of the doctrine of *forum non conveniens*. However, I dissent to the majority opinion insofar as it declares W. Va.Code 56–1–1a (Supp. 2010) ambiguous. I do not believe that it is.

"The existence of a viable alternate forum is a prerequisite to the application of the doctrine of *forum non conveniens*." C.J.S. *Courts* § 94 (footnote omitted). Commentators have further explained:

A court may not dismiss an action on the ground of *forum non conveniens* unless the plaintiff could have brought the action before a court other than the court in which he or she did bring it, and he or she still has such an alternate forum. In other words, the doctrine of *forum non conveniens* presupposes the existence of more than one forum in which jurisdiction may be obtained over the parties and the subject matter of a case in which the controversy may be tried. Thus, the doctrine generally may not be applied where the plaintiff's cause of action was barred by the statute of limitations prevailing in the jurisdiction of the other court. AmJur. *Courts* § 117 (footnotes omitted).

Though North Carolina would appear at first blush to be the best forum for this action, West Virginia is nevertheless a legally viable alternative forum. In the instant case, the appellant's cause of action is barred by the applicable statute of limitations in North Carolina. Therefore, North Carolina is not a viable alternative forum and the doctrine of *forum non conveniens* is not properly applicable. Under our existing law, plaintiff may maintain his action in Monongalia County where venue does lie. I would note that the appellant would have to successfully argue that the discovery rule would apply lest this case be likewise time-barred in West Virginia.